LJW/DEH: USAO # 2017R00827

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WAYNE EARL JENKINS,<br><br>Defendant. | Criminal No. _____<br>CCB-17-0638<br><br>(Destruction, Alteration, or Falsification of Records in Federal Investigations, 18 U.S.C. § 1519; Deprivation of Rights Under Color of Law, 18 U.S.C. § 242; Aiding and Abetting, 18 U.S.C. § 2) |

## INDICTMENT

The Grand Jury for the District of Maryland charges that at all times relevant to this Indictment:

## COUNT ONE
### (Destruction, Alteration, or Falsification of Records in Federal Investigations)

1. The Baltimore Police Department ("BPD") is an agency of the State of Maryland whose law enforcement jurisdiction includes Maryland's largest city, Baltimore.

2. Sworn members of the BPD must abide by the Law Enforcement Officer's Code of Ethics, which provides, in pertinent part:

> As a Law Enforcement Officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation; the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department ... I recognize the badge of my office as a symbol of public faith and I accept it as a public trust to be held so long as I am true to the ethics of police service.

3. WAYNE EARL JENKINS joined the BPD on February 20, 2003 and became a police officer. JENKINS was promoted to Detective on November 30, 2012, and to Sergeant on October 14, 2013.

4. On April 28, 2010, JENKINS, driving an unmarked BPD vehicle with Officer #2 as his passenger, and Officer #1, who was also driving an unmarked BPD vehicle, engaged in a vehicle pursuit of a car driven by U.B. B.M. was a passenger in the car driven by U.B.

5. At the intersection of Belle Avenue and Gwynn Oak Avenue, U.B., who was driving at a high speed, struck a car entering the intersection. The impact of the collision was so great that the car was pushed onto the front porch of a row house on the Southeast corner of the intersection. The car was operated by an elderly man and his wife was a passenger. The elderly driver was trapped in the car after the collision and died later that day.

6. There were no drugs in the car driven by U.B. prior to the crash.

7. After the crash, and after U.B. and B.M. had been arrested, JENKINS told Officer #2 to call a Sergeant who was not at the scene because he had the "stuff" or "shit" in his car, or words to that effect.

8. Officer #2 called the Sergeant but the conversation was brief because the Sergeant had arrived at the scene, having heard Officer #2's request for assistance on the police radio.

9. After speaking with the Sergeant, Officer #2 turned his attention to the elderly driver who remained trapped inside his car on the front porch of the row house. After emergency medical personnel arrived on the scene, Officer #2 returned to JENKINS who was standing near U.B. and B.M.'s car.

10. At that time, JENKINS told Officer #2 that the "stuff" or "shit" was in the car, referring to U.B. and B.M.'s car, and that JENKINS was going to send Officer #1 to the car to find it because Officer #1 was "clueless", or words to that effect.

11. Sometime later, Officer #2 saw Officer #1 searching the car. Officer #1 signaled that he had found something.

12. Officer #1 found approximately 28 grams of heroin that JENKINS had planted in the vehicle.

13. Later that day, JENKINS authored a false Statement of Probable Cause where he claimed that "32 individually wrapped pieces of plastic containing a tan powder substance each weighing approximately one gram (all of which was suspected high purity heroin)" was recovered from U.B.'s car by Officer #1, when in truth and fact, JENKINS knew the heroin in U.B.'s car had been planted. JENKINS, signed the report under an affirmation that declared, "I SOLEMLY AFFIRM UNDER PENALTIES OF PERJURY THAT THE MATTERS AND FACTS SET FORTH IN THE FOREGOING DOCUMENT ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF."

14. Following the incident, JENKINS listened to recorded jail calls of U.B. and B.M. JENKINS told Officer #2 that they were saying that the heroin recovered from the car had been planted on them. JENKINS told Officer #2 that JENKINS could not testify if the case went to trial because, "something had been put in the car" or words to that effect, referring to the heroin that had been planted in U.B.'s car.

15. U.B. and B.M. were subsequently charged with, and imprisoned for, federal drug charges for the heroin that had been planted in U.B.'s car.

16. Between in or about April 28, 2010, and the date of this Indictment, in the District of Maryland and elsewhere, the defendant

**WAYNE EARL JENKINS**

knowingly concealed, covered up and falsified and made false entries in an official Statement of Probable Cause in the District Court of Maryland for Baltimore City reflecting his actions, and the actions of his fellow Baltimore Police Department officers, in relation to the seizure of heroin from an automobile operated by U.B. and in which B.M. was a passenger on April 28, 2010,

3

with the intent to impede, obstruct and influence the investigation and proper administration of that matter, a matter within the jurisdiction of the United States Drug Enforcement Administration, a department and agency of the United States, or in relation to or contemplation of any such matter or case.

18 U.S.C. § 1519

## COUNT TWO
### (Deprivation of Rights Under Color of Law)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 15 of Count 1 are realleged and incorporated herein.

2. Between in or about April 28, 2010, and in or about August 31, 2017, in the District of Maryland, and elsewhere, defendant

### WAYNE EARL JENKINS

while acting under color of law, willfully deprived U.B. of the right, secured and protected by the Constitution and laws of the United States, to be free from the deprivation of liberty without due process of law, which includes the right to be free from incarceration due to the fabrication of evidence by a law enforcement officer. Specifically, on April 28, 2010, the defendant submitted a false Statement of Probable Cause in which he claimed that drugs had been recovered from U.B.'s car, even though the defendant knew that the drugs were planted in the car; thereafter, the defendant failed to correct his false statement during U.B.'s incarceration, which lasted until August 31, 2017.

18 U.S.C. § 242
18 U.S.C. § 2

## COUNT THREE
### (Deprivation of Rights Under Color of Law)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 15 of Count 1 are realleged and incorporated herein.

2. Between in or about April 28, 2010, and on or about September 9, 2013, in the District of Maryland, and elsewhere, defendant

### WAYNE EARL JENKINS

while acting under color of law, willfully deprived B.M. of the right, secured and protected by the Constitution and laws of the United States, to be free from the deprivation of liberty without due process of law, which includes the right to be free from incarceration due to the fabrication of evidence by a law enforcement officer. Specifically, on April 28, 2010, the defendant submitted a false Statement of Probable Cause in which he claimed that drugs had been recovered from a car in which B.M. was a passenger, even though the defendant knew that the drugs were planted in the car; thereafter, the defendant failed to correct his false statement during B.M.'s incarceration, which lasted until September 9, 2013.

18 U.S.C. § 242
18 U.S.C. § 2

## COUNT FOUR
### (Deprivation of Rights Under Color of Law)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 15 of Count 1 are realleged and incorporated herein.

2. Between in or about February 10, 2011, and on or about August 31, 2017, in the District of Maryland, and elsewhere, defendant

### WAYNE EARL JENKINS

while acting under color of law, willfully deprived U.B. of the right, secured and protected by the Constitution and laws of the United States, to be free from the deprivation of liberty without due process of law, which includes the right to be free from incarceration due to a law enforcement officer's willful failure to disclose exculpatory evidence to a prosecutor. Specifically, the defendant willfully violated his ongoing obligation to disclose to a prosecutor the fact that he had lied in a Statement of Probable Cause that he knew would be relied upon, and that was in fact relied upon, to detain U.B.

18 U.S.C. § 242
18 U.S.C. § 2

## COUNT FIVE
### (Deprivation of Rights Under Color of Law)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 15 of Count 1 are realleged and incorporated herein.

2. Between in or about February 10, 2011, and on or about September 9, 2013, in the District of Maryland, and elsewhere, defendant

### WAYNE EARL JENKINS

while acting under color of law, willfully deprived B.M. of the right, secured and protected by the Constitution and laws of the United States, to be free from the deprivation of liberty without due process of law, which includes the right to be free from incarceration due to a law enforcement officer's willful failure to disclose exculpatory evidence to a prosecutor. Specifically, the defendant willfully violated his ongoing obligation to disclose to a prosecutor the fact that he had lied in a Statement of Probable Cause that he knew would be relied upon, and that was in fact relied upon, to detain B.M.

18 U.S.C. § 242
18 U.S.C. § 2

STEPHEN M. SCHENNING
ACTING UNITED STATES ATTORNEY

A TRUE BILL:

11/30/17
Date

SIGNATURE REDACTED

Foreperson

8