UNITED STATES DISTRICT
COURT
District OF maryland

FILED
LOGGED
ENTERED
RECEIVED

AUG 11 2020

AT BALTIMORE
CLERK U.S DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

| United States | July 22, 2020 |
|---|---|
| V. | |
| Wayne Earl Jenkins | Case NO. CCB-1-17-CR-00 |
| — Pro-Se — | 106-00, 3 CCB-1-17-CR-00- |
| | 638-00 |

## — MOTION —
Compassionate Release /
Reduction in Sentence,
Under First step ACT
18 U.S.C. 3582 (c) (1) (A), (I)
— AND —
For appointment of counsel to
Protect constitutional rights under
Due-Process, and the eighth —
Amendment of the Constitution.
To assist in 18 u.s.c. 3553 (a)
Factors, "Re-Sentencing issues",
or to amend this motion for relief."
To Toll-Any and All dead-lines, include "2255"

1) Now Comes, wayne Jenkins seeking re-
lief per First step Act. Also for a sentence
reduction, for "Extraordinary And Comp-
elling reasons" 1) Covid-19-Crissis.

2) Performing Life Saving measures on Inmate Christopher Rocco Vigil, Inmate Number: 10603-091. "See attached response from Warden Phelps, denial of RIS Consideration.

During SHU rounds Warden Phelps stated he agreed I meet all the criterias for a sentence reduction, "You saved a life". But this one is above his pay grade. The court is in a unique postion to evaluate your case, to decide if your Violent. Or, a safty factor to the public. Warden Phelps on this was put between a rock and a hard place.

I agree with Warden Phelps, I meet such criteria "see U.S.S.G § 1B1.13 subdivision D" acknowledges that there may be other situations which constitute extraordinary and compelling reasons and provides a "non-specific" blanket authorization for early release, labeled "Other Reasons", along with the "Catch-All Provision."

My motion for a sentence reduction is properly before the court. I first requested compassionate release through a request form addressed to Warden Phelps. Warden Phelps, acknowledged receipt of request dated Febuary 21, 2020, denied April 17, 2020. This

motion dated July 22, 2020, well after "the lapse of 30-days from the receipt of my request by warden." 18 U.S.C. § 3582 (c)(1)(A) "See recipt attached."

Per First Step Act, it amended § 3582 (c)(1)(A) to add provisions allowing courts to consider motions by defendants for compassionate release without a motion by the BOP Director so long as the defendant has asked the Director for such motion and the Director fails or refuses.

## "Extraordinary And Compelling"
## — Circumstances —
"See Websters Dictionary. Extraordinary: unusual; Exceptional"

1) Your aware our nation is facing difficult times with peacefull protest gone violent, and while Quarartine efforts are made, do to the Covid-19, deadly virus. The Bop has issued the nation wide "Covid-19 Lockdown". "See Bop memo to inmate population". While respecting the Crissis, I still have Protected Constitutional rights to be upheld. My 8th amendment rights are being violated daily. Enough to amount to a cruel and un-

-usual punishment claim. This motion is hand-written do to having very limited access to law-librarry, if any at all. I have no access to legal documents, property, and or legal materials. Such as Typerwritter, Paper, and Stamps. Thus, violating my right to access to the courts. For almost three weeks to a month Commissary didn't sell us inmates stamps. Even now its like hi-ting the lottory to get stamps, some inmates will get'em while others won't. Same goes for writting pad paper commissary has none in-stock for weeks now. We are locked down 23 hours a day at times 24 hours a day with no rec for weeks. Also, been shortage of food inmates starving. In fact they have hunger stricked this issue. All of this is "unusual" and do to the covid-19, virus.

For the reasons listed above, "rights violations" I ask the Court to appoint me counsel. To assist me in amending this motion for relief, and other issues.

2) On 2/20/2020, at approx 21:40 hours officer Blair and I Wayne Jenkins opened cell 118, unit B-1, at F.C.I Edgefield, SC. To lockdown for the night. We observed inmate "Chris Vigil" unresponsive lying in a pool of blood from a head

injury. We observed Chris Vigil was also blue and purple in color. I immediately checked for a pulse on his neck and wrist with negative results. I also checked his breathing and discovered there was none which was also confirmed by officer Blair.

Vigil wasn't breathing and he was still unresponsive. In fear of inmate Vigil's life, safty and well being I immediately started "CPR" which consisted of both chest compressions and mouth to mouth recess-ition.

While I was performing "CPR" I began to sweat while officer Blair reported the medical emergency over the dispatch radio.

Officer Blair then assisted with performing che-st compressions as I continued providing mouth to mouth recessitation.

Myself and officer Blair continued "CPR" until inmate Vigil began to breath again and produce a pulse, as-well as regaining his natural colo-ring, thus saving inmate Vigil's life. (See vigil-medical rec.)

Inmate Vigil is happily married, a man of char-actor, and of God. Who loves his four beautiful children.

Inmate Vigil has a documented history of Epilipsey. hospital records from this incident revealed "CPR" was performed and a seizure was the cause of

this incident. During this seizure inmate Vigil fell to the concrete and struck his head spliting it open causing blood-loss, while unresponsive. Unconscious and bleeding from his head inmate Vigil began throwing up which blocked his airway. Per medical staff to my-self and inmate Vigil "Inmate Jenkins" actions not only saved inmate Vigil's, he also prevented brain damage. "emmphises added" Others, staff and peers find this to be exceptional and encourage my moti-on. Inmate Vigil himself started this process with the request for sentence reduction. "Wayne, you saved my life giving me a second chance to hold, love, my wife and children, a second chance at life, to be-alive. You deserve the same, I'm going to ask the warden and the courts a question. I want to know and so does my family, friends, and as-well as the people. Whats my life worth?" Vigil stated. Inmate Vigil also wrote Sen. Lindsey Gr-aham and President Trump, requesting relief for me in a sentence reduction. Sen. Graham wrote back in support of our mission. Inmate Vigil feels and has expressed to me that the public feed back to him and he's family is, "a life is worth a life." Vigil stated "Congress feels the same way and they speak for the people. A lifes, worth a life. In our country courts daily sentence people who take a

life to life in prison or death. I want to make this law "Rocco's law" if a prisoner saves a life of a staff member, or fellow inmate. And its documented, as long as that person is not a "Serious threat" to the public. Shall recieve a Sentence reduction". This question is now before the court. Again staff state to others, due to inmate Jenkins extrodinary actions. Inmate Vigil is alive and expected to make a full recovery. "emphisis added"

We have had Several deaths here at F.C.I. Edgefield. This year inmate Christopher Ducky, passed. Witnesses State it was do-to staffs failure to respond. I thank God for my being present and training I was able to save inmate Vigil's life. "See Witness affidavids and Statements attached".

I'm a Honorably discharged United States marine Corporal aswell as a former 14 year Veteran law enforcement officer. I have been taught, trained and certified on "First Aid" to include "CPR".

"See Attached"
- Sworn Affidavits-

1) Ray Smith: On Febuary 20 we we're locking down and I was on the Second level. I observed inmate Wayne doing CPR, mouth to mouth on his cell -

mate. I believed the guy was dead because Wayne was doing CPR. At that time the c/o seen what was happening and began to help while giving chest pumps to the dead dude.
"See attached"

Eric Alexander: While looking out my window on the second level I observed Chris lying on the floor in the doorway to cell #118. I then seen Wayne place his hands into Chris's mouth and pull out debris. Wayne then began giving Chris chest compressions. I then heard the officer state several times that He's (Referring to Chris) was breathing again. I'm 56 years old and have never seen someone save a life in my presence. Especially for someone to baiscally place his safty and well being at Jeopardy to save another inmates life without hestitation. I am a God fearing man and prayed to God for what he gave Wayne the power and knowledge to do.    "See attached"

Dallas Townsend: During the lockdown process on Febuary 20th, I observed inmate Virgil knocked out on his back in his cell. He was covered in vomit and had blood under and around his head. He was also a bluish color or tint. In-

p9-8 of 26

mate Jenkins sprung into action and checked for pulse on his neck. Inmate Jenkins then stuck his fingers inmate Vigil's mouth and swept out vomit and/or food. Inmate Jenkins then yelled we have to start CPR at which time he started breathing into inmate Vigil's mouth and swept out vomit and/or food. Inmate Jenkins then yelled we have to start CPR at which time he started breathing into inmate Vigil's mouth. Inmate Jenkins then started going back and forth between inmate Vigil's mouth. Inmate Jenkins then started going back and forth between inmate Vigil's mouth "breaths" and conducting chest compressions. Shortly after Correction Officer Blair started conducting chest compress as inmate Jenkins continued delivering oxygen through mouth to mouth. A period of time later inmate Vigil began breathing but was still unresponsive. However, his natural color did return. I believe inmate Wayne Jenkins and Correction Officer Blair's actions prevented a fatal outcome, not only saving a human life but another family's grief.       " See Affidavit attached"

   Note: This is three of the Witnesses Affidavits. There is additional Affidavits attached.

2) The Reduction is Consistent With the Sentencing Commission's Guidance

In evaluating compassionate release motions filed by defendants, the old (2019-U.S. Dist Lexis-22) Policy Statement does not bind the Courts interpretation of § 3582 (C)(1)(A)(i), See discussion Supra but it does provide useful guidance. Read as a whole, the application notes suggest a flexible approach which considers all relevant circumstances. They indicate that medical conditions, alone or in conjunction with other factors, can constitute extrodinary and compelling reasons, and they recognize that the examples listed in the application note 1 (A)-(B), (D). "Do NOT Capture all extraordinary and compelling circumstances."

Moreover, the terms of the First Step Act give Courts independent authority to grant motions for Compassionate release and says nothing about deference to BOP, thus establishing that Congress wants Courts to take a de novo look at compassionate release motions. As noted Supra, before 2018, Courts Could only grant compassionate release upon motion of BOP, and BOP's decision not to file such motions was

unreviewable. That changed with The First Step Act, which removed sole responsibility from BOP and authorized courts to consider motions of inmates who had tried and failed to convince BOP to move on their behalf.

In light of the First Step Act, Courts are in a "unique" position to determine whether such circumstances are present. See discussion supra; Cf. Cantu, 2019 U.S. Dist. Lexis 1009-23, 2019 WL 2498923, at *5 ("The correct interpretation of § 3582(c)(1)(A)... is that when a defendant brings a motion for a sentence reduction under the amended (2019 U.S. Dist. Lexis 25) provision, the court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1 (A)-(C) warrant granting relief.") "BOP, alredy stated in rejection inmate Jenkins is eligible for relief," expressing extrordinary and compelling reasons exist. The Court Shall now evaluate a Sentence reduction under § 3553(a) factors.

United States v. Cantu, NO. 1:05-CR-458-1, 2019 U.S. Dist. Lexis 100923, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("Because the Commission's

Statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the current statute, 28 U.S.C. § 994(a)(2)(c), an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority. (emphasis in original). It is also inconsistent with the "First Step Act's Spirit," which was enacted to further "Increase the use of compassionate release" and which (2019 U.S. Dist. Lexis 16) explicitly allows courts to grant such motions even when BOP finds they are not appropiate". Pub. L. 115-391, Title VI § 603(b) 132 Stat. 5194 (Dec. 21, 2018) (captioned "Increasing the use and transparency of compassionate release"); See also Cantu, at *4 ("The policy-statement provision that was previously applicable to 18 u.s.c. (c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582 (emphasis in original)

Cf. Setser v. United States, 566 U.S. 231, 242-43, 132 S. Ct. 1463, 182 L. Ed. 2d 455 (2012) (noting that the Pre-First Step Act compassionate release provision in § 3582(c)(1)(A) also provides a mechanism for a district court to grant relief when its "failure to ant-

-icipate developments that take place after---
Sentencing--- produce unfairness to the defen-
dant."

   The old policy statement also requires that
the defendant not pose a "danger to the safety
of any other person or to the community" und-
er 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). This
inquiry heavily depends on the Nature and Cir-
cumstances of the offense and the History and
Characteristics of the defendant, § 3142(g)(1),(3),
both of which are core considerations in the §
3553(a) analysis.

## The Danger And § 3553(a) Factors

   The characteristics and history of the
defendant weigh greatly in his favor. Includ-
ing his rehabilitation efforts. "See Character —
letters attached, Class Certificits, and proof of
employment upon release, also attached." The
defendant is not a danger to the commun-
ity or any other person.

   The Hobbs Act Robbery Conviction in defen-
dants case is illegal based on Johnson v. U.S.
135 S. Ct. 2551 (2015) (Johnson II) and must be

Note: See Rey Chea 9th dist - Finding as Same here that Hobbs Act - robbery is not categorically a crime of violence under the elements Clause of 924(c)(3). The Defendant here adopts All the same arguments as Chea. And was prejudice that this argument was unavailable to the defendant at sentencing. See more below.

Vacated as illegal, the Johnson IIs holding also applies to the residual clause of § 924(c)(3) and renders it unconstitutionally Vague. Also See United States U. Davis 139 S. Ct. 2319, 204 L. Ed. 2d 757. Section 924(c)(1)(A) makes it unlawful for an individual to possess a firearm in furtherance of a crime of violence. Davis, which held that the "residual" Clause of the "crime of violence" definition in Section 924(c)(3)(B) is unconstitutionally Vague. 139 S. Ct. at 2336. Also see U.S. U. Rey Chea 9th dist Case No. Dckt No. 340, 98-cr-20005-1 and 453, 98-cr-40003-2. "Due-Process." Although the proper Avenue for the 924(c) claims are properly brought by § 2255 motion, "which this is not." It's rationale based on all the above authorities and the weight of persuasive authority and may be considered in this motion and § 3553 factors. The 924(c) conviction and Sentence are illegal because the residual clause of § 924(c)(3) is unconstitutionally vague was not reasonably available to defendant at the time he was Sentenced. This has caused prejudice that a failure to recognize at defendants Sentencing that the residual clause of § 924 (c)(3) was unconstitutionally vague worked to defendants actual and Substantial disadvantage, because it resulted in a 240 month Sentence.

Hobbs Act robbery is not categorically a crime of violence under the elements clause of 924 (c)(3), so defendant could not have received a constitutionally valid sentence under the elements clause of § 924(c)(3) at the time he was sentenced. This claim is also good cause to toll any and all dead-lines including 2255, and also another reason to appoint counsel. Finally The court may conclude the offense was not violent. This weighs in the defendants favor.

— History and Characteristics —

Defendants nature and circumstances of the offense criminal conduct was undoubtedly serious, and deserving of "fair and Just punishment."

As to his history and characteristics, the defendant has "NO" criminal history. In the defendants 40 years, he had never been to prison before the arrests leading to the convictions in this case. There is "NO" evidence of prior violent conduct, there was "NO" evidence or indication that he ever used or pointed a gun at anyone, or threatened anyone with a firearm. Defendant had a long history of legitimate employment, serving our country honorable as a marine, followed by a public servant as a peace officer for 14 years. Defendant

has long standing ties to his community, even coaching youth football. The defendant loves the community and still plans to reside there upon release.

The defendant maried his high school Sweetheart. They have 3 beautiful children ages 13, 11, and 3. Around the time of this offence the defendant and his wife lost there son Lucas in 2015. Lucas death weighed heavey on the defendant and his wife. They both fell into a deep depression, from the loss of there child. The defendant felt helpless and numb. He questioned his own life, faith, and God. This time period of his life he felt lost, helpless, and reckless. The defendant was struggling from all this and couldnt confort his wife who was also struggling from her loss of their child.

The defendant don't blame his actions on this event, but the lose of this child did effect his mental being.

While in prison the defendant has endoured many hardships being ex-lawenforcement. The Bop place him in protective custudy yards, which are very few in numbers. This causes placement across the country. Being Seperated

from his family, wife and kids. The defendant feels the negitive toll it has had on the family as a whole. The distance of time and space is hard on his mariage. The kids are medicaly diagnosed with depression, and miss there father. This hurts the defendant deeply and he is sorry he put his family through this. Being in protective custudy yard, "institutions". Has taken the defendant away from his wife and kids. Limeted visits, if any, do to the distance of travel. The defendant is in the Special Housing unit now from being severly assaulted by 3 inmates "Jumped" Do to being ex-lawenforcement. The defendant is pending transfer to a lower security facility for programing and good conduct. The previous institution the defendant was also assaulted for being ex-lawenforcement by a inmate. This has happend at every institution thus far. The defendants sentence has been significantly more laborious then that served by most inmates. A defendant with this repeated issue is more comparable to those offenders then to the general population of federal prisoners.

    The defendant has been in custudy over four years now. That is significant Punishment e-

-specially for someone who had never been incar-cerated before. Cf., e.g. United States v. Lenagh NO. 8:07 CR 346, 2009 U.S. Dist. Lexis 9226, 2009 WL 296999 at *b (D. Neb. Feb. b, 2009) ("A sentence of 24 months is a significant sentence, espec-ially to an offender who has never been incar-cerated at all".)

Per First Step Act, I got 25 years, a life sentence. Offenders with life got there sentences redused to 25 years, how is this a "fair and just" sen-tence for a first time offender. A 25 year sent-ence is for a carer offender. Defendant is no m-ore culpable or at risk then his co-defendants. They got 6 to 8 year sentenceces for the same charges. This causes unwarranted sentence disparity among defendants with similar rec-ords.

Recidivism is always a risk, there are conditions the court can impose to "reasonably assure the safty of any other person and the community." 18 U.S.C. § 3142(g) despite the serious nature of the crimes. The defendant will be on supervised release. The standard and special conditions imposed will result in "substantial oversight" by the probation office. Defendant is subject to warrantless searches on reasonable terms and -

may not leave the district without permission from the court or probation officer. The Court may impose additional requirements, such as house arrest. With appropriate supervision, defendants lack of criminal history, years of employment as a public servent, and serving our country honorable as a marine. The court can conclude that the defendant is not a danger to the safty of any other person or to the community, as provided in 18 U.S.C. § 3142 (G) U.S.S. G. § 1B1-13 (2). See U.S. V. Beck, No. 1:13-CR-186-6, 2019 U.S. Dist. Lexis 108542, 2019 WL 2716505 (M.D. N.C. June 28, 2019) The Conditions of supervised release will limit any ability to engage in criminal conduct without swif detection.

The defendant took steps to mitigate the harm caused by the defendant's criminal conduct. The defendant accepted responsibility, and pled guilty. The defendants age (40), the absence of any indication of violence in the past, and the defendants work history make recidivism unlikely. Sentencing Commission studies suggest that retroactive sentence reductions "do not" increase recidivism rates and that recidivism is extremely rare among inmates who qualify for BOP's Compass-

-ionate release Program.

— Family Circumstances —

The defendant family is experiencing family difficulties. As most familys are, the Covid-19 has taken a negitive toll on my family. I believe my wife and I will soon loose our family home. The Virus Crisiss has cuused a financial hardship on the whole family. This causes my wife depression and anxiety. Our Children each carry an excess weight of over 50+ pounds. The oldest sees a psychiatrist and is prescribed Zoloft 100mg, at the age of 13 years old. My father has taken on the role-model figure for my children, who is 72 years old with many health conditions. He's had coronary bypass surgery, an aortic valve replacement, a replaced hip, had to have a pace maker put in after being taken to the ER for a heart attack. He has diabetes, and gout in feet and hands. He cant keep this role-on much longer. I'm needed home for financial reasons, and as a care giver.

— Rehabilitation Efforts —

The Court shall consider the § 3553 (a) factors in order to impose a new sentence under the First Step Act. A sentence that is sufficient but not greater than necessary, the court may consider any and all relevant Post Conviction Conduct in deciding whether it may depart downward from the advisory guideline range. "See Cf. Pepper V. United States, 562 U.S. 476, 490, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) holding that a district court may consider "evidence of a defendants rehabilitation since his prior Sentencing" to support a downward Variance from the guidelines after that inital Sentence has been set aside.

The defendant has renewed his faith while incarcirated, and finds peace in God. The defendant stays positive and mentor others. He Co-Authored a Bop Program that per "First Step Act" will allow inmates to earn or get time credits for early release with Robert Miller, I'm told this program will be used nation wide.

The defendant has completed: Anger managment, A purpose life and other programs. Staff has informed inmates there are 23-confirmed staff casses that test positive for the corona-virus, and 10-inmates. Thus, four, and are climbing. This causes the defendant difficulties in geting evidence for the court like education transcripts on completed courses. A attorney could help with the issue, he is having. The compound is on lockdown todate. Defendant will continue to self program if allowed, and provide the court with evidence in his rehabilitation efforts. The defendant's clear conduct and programing has earned him a transfer to a low security facility. If and when the nation's BOP lockdown is removed.

— Release Plans —

The defendant has close family ties. "See charactor letters attached" He cares for his family, wife, and kids as-much-as life it self. God willing the defendant

Wants to be home to be there for his boy's as a positive father figure in there lifes, assist them through hardships that teens go thru. Also be a productive husband to his wife, a financil support to her and his family, save there house. The defendant wants to show and lead his family to God, by joining a faith based church. Give back to the community Volunter by helping others in need. Work full-time, Pay taxes, have gainful employment. Upon release he will have employment with "Current Electrical Services" see proof of employment attached. Defendant would love to coach youth football again, as well as Ju-Jitsu in a organized guym in our community. Defendant expresses he wants to care for he's elder parents who are in poor health. So they don't have to go out in public and risk there lifes to the virus.

Appointment
Of
Counsel
pg. 23 of 26

The 4th cir with a Joint proposal
by united States Attorney's office,
the federal defender program, Inc,
and the united States probation
office. upon review of Section 603 of
the First Step Act of the 2018 expan-
ded the authority of district courts to
grant defendants motions for Compass-
ionate release based upon "extraordin-
ary and compelling reasons and pursuant
to 18 usc § 3582 (c)(1)(A) i, and pursuant
to provisions of the criminal Justice Act,
18 u.s.c. 3006 (a)(1) and (c). The First Step
Act of (2018). The Federal defender program
has been appointed to review the file of
each defendant who files pro-se motions
for Compassionate release / or appointment
of counsel to pursue a compassionate
release motion. "see U.S. V. Abdullah NO.
1:14-cr-00344-At-cms Admin-order 20-02
[ Amended] in RE: Application of Section 603
of the 'FSA` (2018) as to Asad Abdullah
4/29/20.

## – Conclusion –

The defendants situation is truely extraordinary and compelling. A search of Lexis Nexis has found (o) casses like this one. Saving a human life, although cited from "Pardons and commutations of sentences." Another situation that you can use is any extraordinary cir- cumstance that may have occurred after you are convicted and sentenced. Let's say for instance, that you were in the dining hall enjoying your meal when the person seated next to you be- gan to choke on a piece of food. Thinking quickly, you rushed to the persons aid, performed the Heimlich maneuver, and thus, saved the persons life. You should be proud of yourself! You should also include this type of action on your commutation petition, especially if it was documented by the prison staff."

Saving a human life "Chris Vigil" life. With all the other factors given with-in this motion warrent a reduction. The defendant thru the help of this writter Christopher Rocco Vigil. Hopes and prays this Honorable Court will have compass-

ion, and grant my motion for a senten-
ce reduction to time served, or any
other reduction such as house arrest
would be blessing.

The above is true and correct,
under the penalty of perjury.

July 22, 2020 | Respectfully Submitted
X Wayne Earl Jenkins
Wayne Earl Jenkins

Note: Davis Case found "Crime of Violence" unconstitution-
ly vague in 924(c) applies to residual clause. Also see
U.S. V. Rey Chea 9th dist Case No. 340, 98-cr-20005 $ 453, 98-cr-4000-
3-2. Hobbs Act Robbery is not categorically a crime of violence
under the elements clause. My 924(c) conviction must be vacated
as illegal at re-sentencing. I adopt same arguments as Davis,
and Chea. Since this argument was unavailable at first sentencing
the courts may use "3582" motion to correct this unfair-unjustice.
See authority to do so with-in this motion.