IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-17-106; 17-638 |
| | * | |
| WAYNE EARL JENKINS | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM

Wayne Earl Jenkins is a forty-one-year-old federal prisoner serving a 300-month sentence for racketeering, racketeering conspiracy, Hobbs Act robbery, destruction, alteration, or falsifications of records in a federal investigation, and deprivation of civil rights under color of law. Now pending is Jenkins's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (CCB-17-106, ECF 576; CCB-17-638, ECF 27). Jenkins seeks relief based on his providing potentially life-saving medical assistance to a fellow prisoner. The government opposes the motion, (CCB-17-106, ECF 610; CCB-17-638, ECF 31), and Jenkins has replied, (CCB-17-106, ECF 626).[1] For the reasons explained below, the motion will be denied.

## BACKGROUND

Jenkins is the former officer-in-charge (OIC) of the Baltimore Police Department (BPD)'s Gun Trace Task Force (GTTF). In 2015 and earlier, and eventually as the leader of the GTTF, Jenkins used his position of authority to rob citizens in the course of his duties, using BPD issued firearms. (CCB-17-106, ECF 254, Plea Agreement, Statement of Facts). Jenkins routinely stole drugs and money from individuals whom he temporarily detained and/or arrested., and he recruited other members of the GTTF into his scheme. In doing so, Jenkins often lied about his authority over the detainee; for example, during one robbery, he falsely told two participants in a drug transaction that

---

[1] Jenkins has also filed several supplements to his motion (CCB-17-106, ECF 590, 606, 607, 608, 621, 625, 630, 647). The court has considered these supplements.

1

he was a DEA agent and that he would let them go but that he might exercise his discretion to charge them in the future. Some of the robberies in which Jenkins participated involved breaking into a residential home or a vehicle. On more than one occasion, Jenkins gave drugs he stole to another individual to sell on his behalf. Also on more than one occasion, Jenkins and his co-defendants entered residences without a search warrant to search for firearms; if firearms were located, Jenkins and his co-defendants would then obtain a search warrant but would lie in the warrant affidavit about the probable cause for the search or fail to disclose that they had already searched the premises. In order to conceal his conduct, Jenkins authored false incident and arrest reports and warrant affidavits or prepared no paperwork documenting his encounters with citizens.

Jenkins also arranged to have heroin planted in a vehicle driven by two individuals, after Jenkins engaged the vehicle in a high-speed pursuit which ended in a collision that resulted in the death of one man. Following the collision, Jenkins searched the vehicle, and did not find any drugs. Jenkins had heroin removed from his own police vehicle and planted in the vehicle he had pursued. Jenkins later authored a false statement of probable cause to support the arrest of the occupants of the vehicle, who were subsequently charged and imprisoned for federal drug charges. (*Id.*, Statement of Facts).

In January 2018, Jenkins pled guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); one count of racketeering, in violation of 18 U.S.C. § 1962(c); two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951; one count of destruction, alteration, or falsification of records in a federal investigation, in violation of 18 U.S.C. § 1519; and three counts of deprivation of civil rights under color of law, in violation of 18 U.S.C. § 242. (CCB-17-106, ECF 254, Plea Agreement, at 1). Jenkins agreed pursuant to Fed. R. Crim. Proc. 11(c)(1)(C) that a sentence between 240 to 360 months of incarceration was an appropriate disposition of his case. (*Id.* at 6). On

2

June 13, 2018, the court sentenced Jenkins to a total of 300 months imprisonment. (CCB-17-106, ECF 422, Judgment; CCB-17-638, ECF 12, Judgment).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

In February 2020, while incarcerated at FCI Edgefield, Jenkins discovered his cellmate unresponsive, without a pulse, and not breathing, due to an apparent head injury. Jenkins cleared the man's throat and administered CPR, eventually assisted by a BOP officer. Jenkins's cellmate regained consciousness due to their efforts. (ECF 576 at 4–5). This act was witnessed by a number of other prisoners. (ECF 590-1, Affidavits).

Jenkins submitted a request for compassionate release to his warden on March 16, 2020; his request was denied on April 17, 2020. (ECF 590-1 at 3, 6). His warden concluded that though Jenkins "perform[ed] life saving measures on an inmate," Jenkins was capable of reoffending and placing the community at "significant risk." (*Id.* at 6). The government does not contest that Jenkins has properly exhausted his administrative remedies. Thus, the only issues are (1) whether "extraordinary and

compelling reasons" warrant the reduction of Jenkins's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

**DISCUSSION**

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Jenkins argues that the actions he took to revive his cellmate constitute an extraordinary and compelling reason for release—that is, a singular good Samaritan act while incarcerated may justify a reduction in sentence. While the court has the discretion to consider any extraordinary and compelling reason that a defendant might raise, *see id.*, it must also be guided by Congress's mandate that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. §944(t). The court is of the view that while Jenkins's exemplary conduct might inform its analysis of the balance of the 18 U.S.C. § 3553(a) factors, if it were to reach that analysis, he is not eligible for relief on the basis of good behavior alone.

4

And even if the court considered Jenkins's conduct an extraordinary and compelling reason to consider release, the § 3553(a) factors do not weigh in favor of release. The court must consider Jenkins's history and characteristics and also ensure that the sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence. *See* § 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A)–(B). Jenkins is certainly to be commended for acting quickly to provide potentially life-saving medical assistance to his cellmate, but this post-sentencing conduct does not persuade the court that release is appropriate. As explained above, Jenkins's conduct was extremely serious. For several years Jenkins routinely engaged in egregious abuses of his authority as a police officer sworn to protect and serve his community. From violating citizens' civil rights by planting evidence, to committing armed home invasion robberies, to falsifying warrant affidavits and incident reports, the court agrees with the government that Jenkins's conduct was a "breathtaking" violation of the trust of the citizens of Baltimore, and warranted a significant sentence. (CCB-17-106, ECF 610 at 20). Releasing Jenkins now, when he has served less than twenty percent of his 300-month sentence, would not adequately reflect the seriousness of the offense, promote respect for the law, or afford adequate deterrence. 18 U.S.C. §§ 3553(a)(2)(A)–(B). Accordingly, the court finds that the balance of the § 3553(a) factors weighs against granting compassionate release.

## CONCLUSION

For the foregoing reasons, Jenkins's motion for compassionate release (CCB-17-106, ECF 576; CCB-17-638, ECF 27) will be denied. A separate Order follows.

 

 7/6/2021                                                   /S/
Date                                                         Catherine C. Blake
                                                              United States District Judge